## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| C.H., by and through his mother, J.H., and J.H., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO: |
| v. | ) ) | _____ |
| HENRY COUNTY SCHOOL DISTRICT, | ) ) | **JURY TRIAL REQUESTED** |
| Defendant. | ) | |

## COMPLAINT

COME NOW Plaintiffs C.H.,[1] by and through his mother, J.H., and J.H., in her own capacity as Plaintiff, and bring this civil action against Defendant Henry County School District (hereinafter referred to as "HCSD").  Plaintiffs request a jury trial.

## PARTIES

### 1.

Plaintiff C.H. (hereinafter referred to as "Cavin") is a 7-year-old child who has autism, speech and language impairment, sensory processing disorder, and social difficulties.  Due to his disabilities, Cavin cannot perform many daily living skills independently, safely care for himself, communicate effectively, perform

---

[1] C.H. is a minor disabled child, so his and his mother's initials or first names only are being used.

certain fine motor tasks, or perform many other major life activities as defined by the Americans with Disabilities Act ("ADA").

2.

Plaintiff J.H. is Cavin's mother, and since 2021 she began exercising her rights under the American with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") to advocate for Cavin to be free from discrimination based solely upon disability; to receive necessary and appropriate accommodations and services to access the same benefits, services, programs, and activities as non-disabled students; and to not be excluded from public education, public education transportation, and other benefits, services, and programs provided by HCSD to other students.

3.

Defendant Henry County School District ("HCSD") is a local government body and municipality operating in Henry County, Georgia under the Constitution and laws of the State of Georgia and has the capacity to be sued.  HCSD is a public entity as defined in 42 U.S.C. § 12131(1) and is a recipient of federal financial assistance.

**JURISDICTION AND VENUE**

4.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2

5.

Venue is proper because the Defendants are located or reside in the Northern

District of Georgia, Atlanta Division.

**COUNTS I AND II**
**HCSD'S UNLAWFUL DISCRIMINATION OF PLAINTIFFS**
**IN VIOLATION OF THE ADA AND SECTION 504**

6.

Cavin is a minor child with qualifying disabilities under the ADA and

Section 504 as set forth in paragraphs 1 and 2 above.

7.

Defendant HCSD is a public entity and receives federal financial assistance.

8.

Plaintiffs seek monetary damages from HCSD for HCSD's intentional

discrimination of Cavin based solely upon his disabilities in violation of the ADA

and Section 504 and HCSD's intentional discrimination of Cavin's mother because

of HCSD's retaliation against Cavin and Cavin's mother.

9.

Cavin is a smart, affectionate, and hardworking child who has an average

non-verbal IQ and who enjoys listening to short stories, helping others, swimming,

learning, and playing outdoors.

10.

Cavin started attending HCSD for the 2019-2020 school year when he was 3 years old and in pre-kindergarten ("pre-k") at Locust Grove Elementary School, which is Cavin's local school based upon his residency.

11.

In early 2021, Cavin began receiving private applied behavior analysis ("ABA") discrete trial training ("DTT"), and his mother, seeing the effectiveness of this service and program, requested HCSD allow Cavin's private ABA provider to come into Cavins's HCSD school three mornings a week to work with Cavin in the school setting to help him access and address schoolwork and an integrated setting.

12.

At the time the request set forth in paragraph 10 was made, Cavin's ABA provider was already providing therapy to a different student at another HCSD school and the provider determined such support would aid Cavin in successfully accessing an integrated setting and education, but HCSD refused to allow Cavin this same program and benefits, all the while HCSD refused to itself provide Cavin this necessary accommodation.

13.

HCSD has continued to intentionally discriminate against Cavin based solely upon his disabilities by refusing Cavin the reasonable accommodation, as recommended by experts, of ABA services, ABA DTT services, Board Certified Behavior Analyst ("BCBA"), and registered behavior technician ("RBT") services so Cavin can access a more integrated setting and education even though Cavin's mother was willing to provide these services herself.

14.

Cavin's mother advocated for the reasonable accommodations set forth in paragraph 13 above starting in 2021 forward so that Cavin could access education provided to all other students in an integrated setting with the assistance of a RBT or BCBA or other individual well trained by a BCBA.

15.

Cavin's mother started advocating for Cavin as set forth in paragraphs 11-14 so, *inter alia*, Cavin could access timely and as needed a bathroom in a public school, but HCSD refused this reasonable accommodation, resulting in Cavin, at the age 5 and ½ years old in March 2022 coming home from school with soiled clothes from defecation and urination because he was being denied the reasonable accommodation of assistance in periodically accessing on a trip-training program the public school bathroom.

16.

Cavin was placed by HCSD in the Autism General Education Program at Unity Grove Elementary School for the 2022-2023 school year and was to be provided 30 minutes of speech therapy ("ST") services 2 times a week in small-group sessions along with 30 minutes of occupational therapy ("OT") services once a week. These accommodations were insufficient for Cavin to be able to access that integrated placement, as Cavin required additional OT and ST, assistive technology ("AT"), AT training, BCBA and or RBT services, a functional behavior assessment, a behavior intervention plan, effective positive reinforcement, and training of the staff supporting Cavin so he could access the same public school benefits, services, and programs, including but not limited to the general education, an integrated setting, and Georgia State educational standards.

17.

Despite the fact that Cavin was scheduled to begin kindergarten at Unity Grove on August 3, 2022, HCSD failed to provide Cavin transportation to school due solely to his disability, forcing Cavin's mother to have to take off work and transport Cavin to and from school although this service was provided to all other non-disabled students by HCSD. This caused J.H. to incur lost wages plus transportation costs, and Plaintiffs are entitled to a jury verdict awarding them monetary damages for these losses.

18.

Despite numerous instances where HCSD indicated to Cavin's mother that Cavin was not having behavior issues at school, during the 2022-2023, without HCSD providing Cavin the reasonable accommodations set forth above in paragraphs 13 and 16, according to HCSD, Cavin became a generally uncooperative student, cried constantly, had difficulty sitting in his chair, and would not do his schoolwork.

19.

HCSD knew Cavin struggled to write due to his fine motor impairments, but HCSD denied Cavin necessary OT so that he could effectively hold a pencil; develop finger dexterity and strength; develop hand, wrist. and arm strength and stability; and access educational programming using writing and be integrated in general education, access general education, and be integrated with and benefit, learn from, and model students without disabilities.

20.

HCSD also intentionally denied to Cavin the reasonable accommodation of ST so he could communicate and thus access the regular education benefits, services, programs, and activities and be integrated in the general education setting and not isolated and stigmatized in a self-contained, non-integrated setting.

21.

HCSD also intentionally discriminated against Cavin by failing to provide

him the very reasonable accommodations of a visual timer and visual schedule for

transitions, proper reinforcements, training with one or more AT devices, ABA

services and supports, and services over the summer so he could benefit from an

integrated setting and interaction with non-disabled students and not be stigmatized

and isolated in a non-integrated setting.

22.

In November 2022, HCSD intentionally discriminated against Cavin based

solely upon his disability by demanding Cavin, at age 6, be totally removed and

excluded from the regular education integrated setting as well as State educational

standards and other benefits of HCSD's public education program and services.

23.

In November 2022, HCSD intentionally discriminated against Cavin based

solely upon his disability by segregating and isolating Cavin to its Adaptive

Curriculum Program at Hickory Flat Elementary School in a self-contained setting

where only disabled students were stigmatized and isolated to by HCSD when

experts determined that with HCSD providing the reasonable accommodations set

forth above Cavin could access a much more integrated setting.

24.

In January and February 2023 forward, HCSD intentionally discriminated against Cavin based solely upon disability by refusing to provide Cavin reasonable accommodations and instead excluding and isolating Cavin from any of the benefits of regular education, by denying him an integrated setting with non-disabled peers, and by stigmatizing Cavin in HCSD's segregated setting.

25.

From November 28, 2022 to December 7, 2022, a total of eight days, HCSD again with total indifference and intentionally did not provide transportation services to Cavin due solely to his disability despite HCSD providing this service to all non-disabled students, again forcing Cavin's mother to miss work and lose wages in order to transport Cavin to and from school each day, entitling her to recover an award of monetary damages for her lost wages and reimbursement for here travel costs.

26.

HCSD intentionally discriminated against Cavin in 2022 and 2023 by denying him reasonable accommodations, including those stated above, by insisting that Cavin be isolated and segregated to a low-functioning, stigmatizing, discriminatory autism classroom lacking necessary accommodations to even access education and where significant behavior problems, including aggression and

violence, were occurring if not multiple times daily or daily, at the very least multiple times a week.

27.

HCSD discriminated against Cavin based solely upon his disability by insisting it could place Cavin at any school location it wished, including one not in his home school zone or one close to his home, and in any program it selected when, according to expert opinion, with reasonable accommodations and services, Cavin could have accessed the school he was attending or his zoned school, general education, State educational standards, and integrated activities, services, and programming if not all day, for a large part of the school day, thereby benefitting from interactions with non-disabled student.

28.

HCSD discriminated intentionally against Cavin based solely upon his disability by insisting in January 2022 forward that for Cavin to have access to any public education setting, that setting had to be discriminatory, segregated, stigmatizing, and harmful and that Cavin, at age 6, had to ride and sit on a school bus each morning for a total time of at least 1 hour and 40 minutes, leaving his home at 5:30 a.m. to enter the school building at 7:10 a.m.

29.

HCSD's intentionally discriminatory transportation also required Cavin to leave school early at 1:40 p.m., get on another bus ("Bus #2"), and ride from Hickory Flat Elementary School to EXCEL Academy and School of Scholars (HCSD's alternative school for students who have been expelled or suspended from non-alternative school for serious code of conduct violations), where Cavin would be placed on another bus ("Bus #3).

30.

HCSD's intentionally discriminatory transportation plan required Cavin to wait on Bus #3 for alternative middle school students to board, and then wait additional time, approximately 45 minutes, on Bus #3 for the high school alternative school students to be released and seated on the same bus with Cavin, who was 6 years old and could not communicate if any student expelled or suspended from school harmed him.

31.

HCSD intentionally discriminated against Cavin based solely upon his disabilities by demanding Cavin leave school early and be on Bus # 3 for at least 2 hours and 20 minutes each afternoon, including with middle and high school students who had been suspended and or expelled from non-alternative school.

32.

HCSD intentionally discriminated against Cavin based solely upon his disability by HCSD demanding Cavin ride and sit on a bus for 2 hours and 50 minutes to get home from school while the provision of reasonable accommodations from HCSD provided to Cavin and while the HCSD benefits and services provided to non-disabled students would have provided Cavin with a bus ride from home to school in 45 minutes or less. HCSD did not and does not subject non-disabled students to that set forth in paragraphs 28-31 above.

33.

HCSD intentionally discriminated against Cavin by removing him to a non-integrated environment allegedly due to not doing school work, crying, and walking around; however, HCSD refused to provide Cavin the reasonable accommodations of behavior support, proper assessment of behavior, BCBA support, RBT support or support from one trained by a BCBA, an effective reinforcement system, a behavior intervention plan, trained staff, visuals and visual schedules, and necessary AT, OT, and ST so Cavin could access an integrated setting and benefit from interaction with non-disabled peers.

34.

HCSD intentionally discriminated against Cavin based solely upon his disability in January 2023 forward and ongoing by requiring Cavin be segregated

and isolated as set forth above and demanding he ride and sit on a various buses

such that at beginning at age 6 forward, Cavin, if he were to access any public

school setting, would be required to be away from home home for 10 to 11 hours

or more each school day and would be required to defecate and urinate on himself,

as HCSD knew that Cavin required to be taken to the bathroom each hour to not

have toileting accidents and to access the toilet as needed pursuant to his

disabilities.

35.

Taking a child with autism such as Cavin to the bathroom on a trip training

program and providing him access to a bathroom as needed to prevent him from

defecating and urinating on himself is a reasonable accommodation that HCSD

refused and still refuses to provide to Cavin both at school and with its

transportation plan and was and is intentional discrimination by HCSD of Cavin

based solely upon his disability, thereby excluding him from public education.

36.

Instead of providing Cavin necessary and reasonable accommodations under

the ADA and Section 504, HCSD instead forced Cavin to leave home at least by

5:30 a.m. each school day, demanded Cavin be denied education like all other

students by forcing him to leave school early, insisted Cavin ride and or sit on

school buses each day for 4 hours up to 5 or 6 hours each school day, and

demanded he ride a bus with middle and high school alternative students who had been suspended or expelled from school for significant behavior infractions when non-disabled students were and are not required to do any of this but instead were and are provided transportation generally lasting no more than 40 minutes to school and 40 minutes from school.

37.

HCSD having stigmatized and isolated Cavin as set forth above, HCSD, without any concern for Cavin's wellbeing, age, needs, or safety, further intentionally discriminated against Cavin based solely upon his disabilities by requiring in January 2023 forward that Cavin attend a school that would require Cavin to ride and or sit in three different school buses each school day for 4 to 6 hours a school day, sitting in urine and or defecation.

38.

HCSD intentionally discriminated against Cavin based solely upon his disabilities by demanding that Cavin in January 2023 forward be segregated to a room and subjected to a chaotic, violent, and aggressive behaviors that cause physical harm and are so difficult and challenging that those in that room do not receive access to physical education ("PE") or recess outside when HCSD provides these benefits to its non-disabled students and while reasonable accommodations would have allowed such access.

39.

HCSD intentionally discriminated against Cavin based solely upon his disabilities in January 2023 forward by denying Cavin reasonable accommodations so he could access any activities, programs, benefits, or services provided to regular education students and by denying him access to his home school or the one he had been attending and to one that did not require at least 4 hours of riding and sitting on a bus all school day long.

40.

Fearful for her child's safety due to HCSD's intentionally discriminatory, unsafe, unsanitary, and inappropriate transportation plan for Cavin, Cavin's mother tried to resolve the matter with HCSD, which did not care at all about any harm to Cavin, such that J.H. was forced to transport Cavin to and from Hickory Flat Elementary School each day, causing her to again suffer a loss of wages, wear and tear on her car, and transportation costs for transporting Cavin, all of which Cavin's mother is entitled to recover in monetary damages, the amount of which to be determined by a jury.

41.

On January 17, 2023, Cavin's mother sent Amy Zahn, a HCSD Coordinator of Exceptional Student Education ("ESE") an email detailing her concerns with Cavin's harmful transportation plan, HCSD not providing appropriate services to

Cavin, and the inappropriateness and danger for Cavin to be placed on a bus with expelled or suspended students in middle and high school grade levels, but Amy Zahn did not even bother to respond to these very serious concerns, demonstrating much more than intentional indifference.

42.

HCSD also intentionally discriminated against Cavin based solely upon his disabilities by demanding that Cavin be placed in January 2023 forward in a non-integrated, segregated, stigmatizing placement that contained one-piece student desks designed for adults and or larger and older students such that Cavin could not access a desk independently and his feet could not touch the floor once placed in the desk.

43.

HCSD intentionally discriminated against Cavin based solely upon his disabilities by demanding that Cavin be placed in January 2023 forward in a non-integrated, segregated, stigmatizing placement that denied Cavin access to a bathroom he could access independently as HCSD denied Cavin a smaller, younger child toilet and toilet seat thus requiring Cavin be placed on the toilet and held on it with his feet dangling so he would not fall into the toilet and by denying him independent access to paper towels.

44.

Cavin's mother raised issues with HCSD staff in January 2023 forward with the adult/older student desks, adult/older student toilet and toilet seat, adult/older student bathroom that Cavin could not access himself, but HCSD never addressed or even attempted to address this abject discrimination of Cavin because of his disabilities despite HCSD providing to non-disabled students furniture, toilets, toilet seats, and bathrooms they could independently access.

45.

While at Hickory Flat Elementary School, HCSD intentionally discriminated against Cavin by providing him no reasonable accommodations of OT so he could access his education and written education, all the while HCSD denied him reasonable access to the accommodation of AT.

46.

In response to Cavin's mother's and her legal counsel's repeated requests for alternative transportation plans for Cavin, HCSD untimely provided three intentionally discriminatory, vague, not defined alleged but not "options" that were still discriminatory and harmful to Cavin, including the fact each required Cavin ride a school bus for 3 plus school hours a day.

47.

Not one of HCSD's alleged alternative transportation plans provided the time HCSD would mandate Cavin ride and sit on a bus each school day, but enough information can be gleaned from what was provided to recognize that the plans would discriminate against Cavin by making him ride the bus a discriminatory amount of time each school day when regular education children were not so required.  By doing so, as before, HCSD excluded Cavin totally from public transportation and thus public education because his disabilities would not allow him to ride a school bus for so long and be denied his trip training program.

48.

HCSD's first alleged "option" required Cavin's mother, who had to work each school day, to instead take Cavin to some unknown, undetermined location each school day and sit and wait on a bus for some unknown time.  This required Cavin's mother to be at some place at approximately 6:00 a.m., thereby denying her other disabled child transportation, pick Cavin up at some unknown location at 3:45 p.m., requiring Cavin to be on the bus for over 3 hours each school day and to also ride in a car for additional time.  This was intentionally discriminatory, and it was retaliatory for Cavin's mother's continued advocacy and her retention of legal counsel to advocate as well for Cavin.

49.

HCSD's second alleged "option" involved a direct route that would arrive at school at an earlier time, require Cavin to sit on the bus or somewhere and wait, and it failed to provide exact pick up and drop off times.  Under Option 2, Cavin would be required to leave school early each day and be required to ride the bus home from school for at least 2.5 hours each school day.

50.

HCSD's third alleged "option" was called the "elementary hop" option and required that one bus ride to a different school to meet a second bus that goes to Hickory Flat Elementary in both the morning and afternoon.  In this option, HCSD failed to provide any specific times for pick-up or drop-off claiming the times were "difficult to provide with accuracy due to the complexity of this route," with no route, times, schools, or other information provided.

51.

Each of HCSD's alleged transportation options were and are all still inappropriate, harmful, and intentionally discriminatory as the first option required Cavin to be on a bus for 3 to 4 hours each school day with additional time in his mother's car, option 2 failed to address who would be responsible for Cavin while he was waiting on the bus and outside at school each day and was still discriminatorily too long, and option 3 required Cavin to leave school even earlier

and is entirely lacking in information to know where Cavin would be picked up, when he would get to school, and when he would arrive home, yet sufficient to know he would be riding and or sitting and or waiting on a bus for 3 plus hours each school day at the age of 6 going forward.

52.

On February 9, 2023, a meeting was held with HCSD, including but not limited to HCSD administration, HCSD special education administration, HCSD's attorney, Cavin's mother, and Cavin's and his mother's attorney.

53.

Cavin's mother asked about physical education ("PE") during the February 2023 meeting, and Ms. Martuzas, Cavin's teacher, stated her class does not get to access PE because other students' (not Cavin's) behavior in the segregated, separated, stigmatizing setting made it unsafe to do so.

54.

HCSD denying Cavin access to PE in January 2023 forward was and is intentionally discriminatory and demonstrates an abject and intentional indifference to Cavin being provided access to important physical education like non-disabled students and to state and federal laws.

55.

HCSD denying Cavin access to PE in January 2023 forward was and is retaliatory as well, and HCSD has never once tried to remedy this issue despite HCSD, its administration, and its attorneys knowing full well state and federal law and regulations mandate HCSD provide Cavin access to PE.

56.

At and throughout the February 2023 meeting, Ms. Martuzas spoke on multiple occasions about HCSD's discriminatory, non-integrated, segregated setting where HCSD demanded Cavin go, discussing her "challenging students," "challenging issues," and "rough days in the classroom" in the Hickory Flat Elementary Adapted Autism Program.

57.

When Cavin's mother asked at the February 2023 meeting if HCSD was placing Cavin in a classroom where aggressive behaviors were a concern, HCSD, through its attorney, refused to allow Ms. Martuzas or any other staff member to discuss aggressive, violent, harmful behaviors including biting, kicking, hitting, and other such aggressions, other than to falsely allege no aggression and violence occurred to other children.

58.

HCSD, through its attorney, refused to disclose the violent and aggressive behaviors in HCSD's adaptive curriculum program and to falsely deny that any harm came to children in that segregated setting in order to hide how discriminatory and dangerous HCSD's non-integrated setting was and to retaliate due to Cavin's mother having asked for reasonable accommodations for Cavin to access a more integrated setting and for her retaining legal counsel.

59.

HCSD intentionally discriminated against Cavin based solely upon his disabilities by HCSD refusing to allow any truthful and disclosing discussion regarding aggressive behaviors and violence in the non-integrated setting and by HCSD refusing to include in the meeting minutes that it in fact had refused to inform Cavin's mother if aggression was going on in the classroom and if so, what kinds of aggression and violence.  This was also retaliatory because Cavin's mother had requested additional accommodations and by that time, had retained legal counsel.

60.

The day after HCSD refused to disclose the aggression and violence in HCSD's non-integrated, discriminatory setting, on February 10, 2022, Cavin, who was merely sitting and not bothering or interacting with anyone, was significantly

bitten by another student in the Alternative Curriculum Placement Program, requiring he leave school to obtain medical care and resulting in Cavin being scarred for some time.

61.

From January 17, 2023 until Cavin was bitten on February 10, 2023, Cavin's mother was forced to provide transportation for Cavin to and from Hickory Flat Elementary school each day, causing her to miss two hours of work each day and thus suffer a loss of wages in the approximate amount of $345 and costs of transportation for having to transport Cavin 792 miles, and J.H. is entitled to a monetary award for these damages, as determined by a jury.

62.

At the February 2023 meeting, the explanation given to Cavin's mother regarding why Cavin had not been provided access and reasonable accommodations, including but not limited to a bathroom and toilet he could access himself, was the false statement: "That is how schools are built."

63.

The assertion in paragraph 62 by HCSD about how schools are built above for Cavin being denied a bathroom and toilet he could independently access was knowingly false, as the non-disabled students Cavin's age in that school building

were given access to bathrooms, toilets, toilet seats, and paper towels for their size so they could independently access them.

64.

At Hickory Flat Elementary School, HCSD intentionally denied Cavin, due solely to his disabilities, reasonable accommodations needed access to the bathroom, a bathroom Cavin's size, a safe and integrated placement, recess outside, PE, access to State standards, integration, interaction with non-disabled peers, and non-discriminatory transportation as were provided to all other students despite HCSD receiving more funding to educate Cavin than it receives to educate non-disabled students.

65.

At Hickory Flat Elementary School, because of HCSD's intentional discrimination of Cavin not providing him the reasonable accommodations of access to a bathroom Cavin could independently access, sufficient access to a bathroom, and an integrated setting, Cavin urinated and or defecated on himself five times in five days at school, if not more, and he is entitled to recover monetary damages for this injury.

66.

As set forth above, solely because of Cavin's disabilities, Defendant HCSD intentionally refused to provide Cavin reasonable accommodations so he could

access public education, intentionally and maliciously treated him disparately because he was disabled, totally excluded and isolated him from public education and from public school transportation, excluded him from an integrated setting he could access with proper accommodations, and significantly interfered with the exercise of his right to a public school education, and HCSD continues to do so.

67.

HCSD's intentional, ongoing discrimination as set forth in the above paragraphs resulted in Cavin's mother having to quit work and educate Cavin, obtain private services and programs for Cavin, incur costs to educate Cavin, provide Cavin transportation, purchase educational materials and programming, and suffer other monetary damages, for which Cavin's mother is entitled to recover in this lawsuit.

68.

While some costs are not known at this time and with mileage costs calculated at the federal business mileage rate, Cavin's mother has incurred, at the very least, $2,185.54 in damages for having to provide Cavin transportation for at least 3,262 miles, and J.H. is entitled to a monetary award in this amount and in an additional amount for the damages for having to provide actual transportation that are ongoing.

69.

As set forth above, HCSD is intentionally discriminating against Cavin solely because he is a child with disabilities and HCSD continues to do so, such that Plaintiffs are entitled to recover monetary damages for Cavin's injuries, including HCSD excluding and or substantially interfering with his right to public education and public transportation, HCSD denying Cavin an integrated setting, HCSD segregating, stigmatizing, and damaging Cavin as set forth above as well as for forcing Cavin's mother to educate and pay to educate Cavin and to have to quit her job despite being a mother of two disabled children.

70.

Because of HCSD's intentional ongoing discrimination and exclusion of Cavin from accessing education, an integrated setting, recess, recess outside, PE, a bathroom on a regular schedule, a non-violent, aggressive setting, a bathroom Cavin can access independently, needed access to the bathroom, and non-discriminatory transportation, Cavin's mother has incurred in costs to educate Cavin and in missed work monetary damages at the current time exceeding $38,662.69, and she continues to incur such damages, and she is therefore entitled to recover those damages from a jury of her peers.

71.

Because HCSD discriminated against J.H. by retaliating against her once she began requesting reasonable accommodations for Cavin and because HCSD continues to retaliate against Cavin's mother thereby discriminating against her, Cavin's mother is entitled to recover monetary damages for all the injuries HCSD has caused her.

72.

Plaintiffs are both entitled to receive injunctive relief against HCSD prohibit HCSD from mandating Cavin ride a bus more than 45 minutes to school and 45 minutes to home, be placed on a bus with alternative and or much older students, have to be transported in a car to wait on a bus and come home from the bus, leave school early, leave his home before 6:25 a.m., leave school early, be placed in a violent, aggressive, harmful setting, and be discriminated against by HCSD as set forth above, such as denying Cavin regular access to a bathroom he can independently access, PE, and outdoor recess.

73.

Despite HCSD being fully aware of the above intentional discrimination by the delivery of documents setting forth the above state issues to HCSD top administration (executive director of ESE, ESE compliance director, transportation executive director, and others) and legal counsel in 2022 and in 2023 and to the

superintendent of HCSD and HCSD's attorney in February 2024, HCSD still refuses to discontinue its intentional, harmful, ongoing discrimination of Cavin to this day and going forward, and Plaintiffs are entitled to injunctive relief against HCSD to prevent its ongoing intentional discrimination and exclusion of Cavin from public school and transportation and significant interference with Cavin exercise of his right to public school education and public school transportation.

74.

HCSD's intentional discrimination of Cavin is ongoing such that Cavin has been isolated and excluded from public education and public school transportation and continues to be so excluded and isolated, and HCSD will continue to do so if not enjoined, such that injunctive relief is appropriate, and Plaintiffs request this relief and recovery of all money damages they have incurred due to HCSD's intentional discrimination.

## COUNT III AND IV

## HCSD'S UNLAWFUL RETALIATION OF PLAINTIFFS

## IN VIOLATION OF THE ADA AND SECTION 504

75.

Plaintiffs incorporate herein and set forth fully the factual assertions set forth in paragraphs 1-3, 15, 24-26. 28. 48, 53, 54, 57-59, and 71 as if fully set forth herein.

76.

Plaintiffs Cavin and his mother seek recovery from HCSD for the damages caused them due to Defendant's intentional retaliation against and harassment and coercion of Plaintiffs and HCSD's intentional retaliatory interference with Cavin accessing education and transportation free from discrimination based solely upon disability due to Cavin's mother advocating for Cavin to receive a non-discriminatory, integrated setting; to receive the necessary accommodations set forth in Counts I and II above; and to exercise and enjoy his rights under the ADA and Section 504.

77.

Since 2021 forward, Cavin's mother has continued to advocate for Cavin's private ABA therapist and or RBT to be permitted to work with Cavin in a school setting at HCSD so he could continue to access a more integrated, safe, non-discriminatory setting and receive the benefits, programs, and activities provided non-disabled students as set forth above.

78.

In September 2022, Cavin's mother was advocating for Cavin by attending meetings and requesting supports and services from HCSD, including that Cavin receive his ST outside of the classroom setting in a distraction free environment; that Cavin have access to an AT evaluation, AT device, and AT training; that

Cavin's private ABA provider be permitted to work with Cavin three times a week in a school setting with Cavin so he could access an integrated setting; and that Cavin receive other reasonable and necessary accommodations as set forth in Counts I and II above so that Cavin would receive access to a non-discriminatory education in an integrated setting and interaction with non-disabled peers.

79.

In October and November of 2022, Cavin's mother was advocating for Cavin by attending meetings and requesting supports and services from HCSD, including for Cavin to receive a non-discriminatory education in an integrated setting, for Cavin to be provided proper behavioral supports, for Cavin to have access to a weighted vest, and for Cavin to be provided other reasonable and necessary accommodations for Cavin to receive a non-discriminatory education in an integrated setting.

80.

Because Cavin's mother was advocating after the 2022 school year began in August forward for Cavin to receive a non-discriminatory education in an integrated setting and for Cavin to receive necessary and reasonable accommodations, in November 2022, HCSD demanded that Cavin be placed in a non-integrated, segregated, discriminatory placement in a classroom that contained a bathroom, toilet, sink, and desk that Cavin could not access independently, with

aggressive, dangerous, and violent behaviors going on consistently in that separate setting.

81.

Because Cavin's mother was advocating for Cavin to receive a non-discriminatory education in an integrated setting and for Cavin to receive necessary and reasonable accommodations, in November 2022, HCSD intentionally retaliated against Plaintiffs by demanding Cavin be relegated to a non-integrated, segregated, violent setting where Cavin was denied PE, outdoor recess, recess, integration with non-disabled students, a non-stigmatizing placement, a desk and a bathroom he could access independently, needed access to a bathroom, and non-discriminatory transportation.

82.

Because Cavin's mother was advocating for Cavin to receive a non-discriminatory education in an integrated setting and for Cavin to receive necessary and reasonable accommodations as set forth above, in November 2022, HCSD intentionally retaliated against Cavin and his mother by demanding that Cavin ride and sit on a school bus each day for 4 to 6 hours each school day when regular education students are required to ride a school bus each way only 45 minutes.

83.

Because Cavin's mother was advocating for Cavin to receive a non-discriminatory education in an integrated setting and for Cavin to receive necessary and reasonable accommodations, in November 2022, HCSD intentionally retaliated against Plaintiffs by demanding Cavin to defecate and urinate on himself at school and on the bus, ride multiple school buses each day, wait on a school bus for other students to get out of alternative school and get on the bus, ride a school bus with older students who had been suspended or expelled from school, and leave school early each day when HCSD does not subject non-disabled students to such abuses.

84.

Because of Cavin's mother's advocacy for Cavin to be free from discrimination based solely upon disability, HCSD retaliated against Plaintiffs by lying to them, such as by claiming Cavin had no access to a smaller bathroom and toilet, sink, and paper towels because that's just the way schools are built and by lying to Cavin's mother by claiming no violence occurs to students in the segregated setting when in fact the very next day Cavin was viciously bitten and required medical attention.

85.

Because of Cavin's mother's advocacy for Cavin to be free from discrimination based solely upon disability, HCSD retaliated against Plaintiffs by refusing to even provide Cavin with a desk he could independently access and by refusing to provide Cavin transportation that did not require he sit and ride a bus at least 4 hours each school day, and this is so despite the fact HCSD receives additional funding for Cavin because he is a disabled student and despite the fact HCSD provides non-disabled students desks they can independently access and bus rides no more than 45 minutes each way.

87.

Because Cavin's mother had sought supports and services in a safe, integrated, non-discriminatory setting, and because she and Cavin were seeking for Cavin to exercise his rights to be free from discrimination based upon disability, in 2023, HCSD intentionally retaliated against Plaintiffs by excluding and isolating Cavin through its acts as set forth herein public school education and public school transportation and by significantly interfering with Cavin's exercise of his right to public school education and public school transportation.

88.

Because of the retaliation set forth above by Defendant HCSD against Cavin and Cavin's mother, Cavin's mother has been prevented from advocating for her

child to receive a non-discriminatory education and access; forced to pay for

education for her child and to provide private services; forced to quit work and

therefore lose income to teach her child, forced to miss work to provide

transportation to Cavin, forced to retain an attorney, and caused additional ongoing

harm for which Cavin and his mother are entitled to an award of monetary

damages as determined appropriate by a jury.

89.

Because of Defendant HCSD's intentional violation of the anti-retaliation

provisions of the ADA and Section 504 as set forth above, Plaintiffs seek recovery

for all the damages caused them by Defendant HCSD and as allowed by law in a

monetary amount to be determined by a jury.   Plaintiffs do not seek any relief for a

denial of a free appropriate public education in this lawsuit, and the only relief they

seek is recovery of monetary damages and fees and costs and injunctive relief

under the ADA, Section 504, the Equal Protection Clause, and Section 1983.

**<u>COUNT V</u>**

**<u>HCSD's VIOLATION OF 42 U.S.C. § 1983 AND CAVIN'S</u>**

**<u>CONSTITUTIONAL RIGHT TO EQUAL PROTECTION</u>**

90.

Plaintiffs incorporate the facts asserted in paragraphs 1-3, 24-26. 28. 32, 34-

40, 44, 46-66, 83-88 above as fully set forth herein.

34

91.

Since 2022 forward, HCSD has and still is intentionally denying Cavin his right to equal protection of the law pursuant to the Fourteen Amendment of the U.S. Constitution in violation of 42 U.S.C. § 1983.

92.

Because Cavin is a child and student with autism and because he is a child and student with autism whose mother advocated and still advocates for him pursuant to the ADA, Section 504, and other laws, HCSD has refused since November 2022, and still is refusing to provide Cavin with equal access and with any access to public education in violation of the Fourteenth Amendment to the U.S. Constitution, giving Cavin a cause of action pursuant to 42 U.S.C. § 1983 against HCSD, and Cavin is entitled to recover his damages caused by HCSD in a monetary amount to be determined by a jury.

93.

Cavin has a constitutional and fundamental right to public education and to access public education and to public transportation, but since HCSD has denied from January 2023 forward Cavin either any transportation or transportation that Cavin cannot access because it requires he be on a school bus for 4 to possibly 6 hours a school day and defecate and urinate on himself on the bus, HCSD has intentionally and in bad faith denied Cavin a public education and public school

transportation and continues to do so in violation of Cavin's right to equal treatment under the law.

94.

Because Cavin is a child and student with autism and a child and student with autism whose mother has advocated and is advocating for him to be free from discrimination based upon his disabilities, HCSD intentionally refuses to treat Cavin in the same manner as non-disabled students, disabled students who do not have autism, and disabled students whose parents have not advocated for them by demanding he ride and sit on a school bus 4 to possibly 6 hours each school day, thereby totally denying Cavin access to public education, for Cavin, a child with autism and related disabilities and having to access the bathroom regularly, cannot ride and sit on a school bus 4 to possibly 6 hours a school day, and HCSD knows this.

95.

HCSD generally only requires students with no disabilities to ride to school and to ride home from school 40 minutes each way, and it never requires any student, other than Cavin because he is a student with autism and a student with autism whose mother advocated for him, to ride a school bus more than one hour each way or to ride and sit on a school bus for 4 or more hours each school day.

96.

There is no government interest, no valid government interest, and no legal, acceptable, or rational basis for HCSD to subject Cavin to riding and sitting on a school bus 4 to 6 hours each school day, for a total of 24 hours to 30 hours a week thereby requiring he defecate and urinate on himself and not access public school education and public transportation and thereby substantially interfering with his right to receive public school education.

97.

HCSD has not offered an actual, real alternative to its requirement that Cavin, now age 7, ride a bus with middle school and high school alternative school students who could be as old as 19 years of age and whose behavior was and or is so severe it resulted in expulsion or suspension from school, and HCSD continues to refuse to do so. Not once has HCSD set forth even one detailed plan with information about length of ride each way for Cavin to access education, and any alleged vague alternative requires Cavin ride and sit on a bus more than 3 hours each school day.

98.

Forcing Cavin to ride a school bus with middle school and high school alternative school students up to age 19 when Cavin is 7 because Cavin is a child with autism and or because Cavin's mother advocated for him is a denial of

Cavin's right to equal protection of the law, as is HCSD forcing Cavin to ride and sit on a school bus for 4 or more hours each school day.

99.

HCSD's classification of Cavin as a student with autism and as a student with autism whose mother has and is advocating for him to deny him public school transportation to school and from school each school day that he can access and that is limited to no more than an 45 minutes each way has no validity and is done to intentionally deny Cavin equal access under the law to public school education and to public school transportation.

100.

HCSD provides to all non-disabled students, disabled students who do not have autism, and disabled students with autism whose mother did not advocate for them, access to elementary school physical education, bathrooms their size that they can access independently, desks their size that they can access independently, and transportation services that do not require them to ride and or sit on a bus for more than 1.5 hours a day, ride multiple school buses, wait sitting on buses for up to 45 minutes at time, have parents travel to some unknown site to wait for buses, ride buses with much older, larger children who were expelled or suspended from school, leave school early, and leave one's home at 5:30 a.m. to go sit on the bus later, but HCSD has a policy, practice, and custom that it can and does do all of this

to students with autism and or students with autism whose mother has advocated for them to receive a non-discriminatory education, and this is what HCSD is intentionally doing to Cavin, despite it receiving extra funding to educate Cavin.

101.

HCSD has a custom and practice fully supported by the superintendent, board of education, and legal counsel for the board of education and HCSD that HCSD can place children with autism at any school at any location at any time without any input from the autistic student's parents, even if this requires the children with autism ride and sit on a school bus 4-6 hours each school day, ride with alternative school students much older, and leave school early thereby not receiving the education all non-disabled students receive, and this is what HCSD has and continues to do to Cavin, thereby denying him his fundamental right to public education and to public school transportation.

102.

To this date, HCSD continues to refuse to provide to Cavin due to his autism and or due to his mother's advocacy for Cavin under the ADA and Section 504 with transportation to access any public school education, mandating instead he spend at least 20 plus hours a school week on a bus defecating and urinating on himself, knowing this denies Cavin access and a right to public education.

39

103.

HCSD does not force students without autism or students whose parents have not advocated for them to defecate and urinate on themselves by mandating they ride and sit on buses for 4-6 hours each school day, by denying them access to a bathroom at school when needed, by denying them regular access to a bathroom as needed, but HCSD has a custom and practice of doing this, as it is doing to Cavin, to students with autism and or students with autism who parents have advocated for them.

104.

HCSD provides to all non-disabled children and disabled students who do not have autism and or who do not have autism whose parents have advocated for them transportation services that do not require them to ride on the bus with children who are older, larger and have been suspended or expelled from school at HCSD, but HCSD has a widespread implemented policy, practice, and custom of requiring children with autism and or children with autism whose parents have advocated for them to leave school early each day, leave home early in the morning and afternoon to ride the school bus, ride multiple school buses each day, and wait each day on the bus at other schools for students from other schools to get on the bus, requiring so many transitions and stops that the children with autism and

children with autism whose parents advocated for them cannot access education

through public transportation, as is so in this case involving Cavin.

105.

On January 17, 2023, Cavin's mother sent Amy Zahn, a HCSD Coordinator

of Exceptional Student Education ("ESE") an email detailing her concerns with

HCSD's harmful transportation plan for Cavin, HCSD not providing appropriate

services to Cavin, and the inappropriateness and danger for Cavin to be placed on a

bus with expelled or suspended students in middle and high school grade levels,

but Amy Zahn did not even bother to respond to these very serious concerns

because HCSD has a wide spread custom and practice of not providing students

with autism placed in non-integrated settings accessible transportation to school

and from school.

106.

On January 23, 2023, Cavin's mother emailed HCSD's Special Education

Coordinator, Amy Zahn, and HCSD's Director of Transportation, Jennifer McDay.

Cavin's mother also copied on the email HCSD's Executive Director of Special

Education, Latrina Coxton, HCSD's Director of Special Education Instruction,

LaTonya Brown, HCSD's Special Education Coordinator, Amy Zahn, HCSD

Director of Transportation, David Hughes, and HCSD's Executive Director of

Transportation, Cliff Shearouse.

107.

In Cavin's mother's email sent on January 23, 2023, she informed HCSD's staff and top administrators of Cavin's discriminatory and unilateral placement at Hickory Flat Elementary, HCSD not providing appropriate reasonable accommodations to Cavin, HCSD failing to implement Cavin's toileting program, and the inappropriateness and dangerous nature of Cavin's transportation plan that required him to be on the same school bus for multiple hours each day with students who have been suspended or expelled from HCSD for serious code of conduct violations when Cavin cannot communicate his needs or advocate on his own behalf.

108.

HCSD directors and administrators Amy Zahn, Jennifer McDay, Latrina Coxton, LaTonya Brown, David Hughes, and Cliff Shearouse received notice of Cavin's mothers' concerns and the constitutional violations suffered by Cavin when Cavin's mother copied each individual in her email to HCSD.

109.

HCSD directors and high-ranking administrators Amy Zahn, Jennifer McDay, Latrina Coxton, LaTonya Brown, David Hughes, and Cliff Shearouse, individually and collectively, have final decision making authority on behalf of HCSD and substantial supervisory authority within HCSD and had complete

discretion in regard to the provision of transportation services in HCSD as a whole and in this case to Cavin, a child with autism.

110.

HCSD was aware of its intentional discrimination and retaliation of and denial of equal protection of the law to Cavin when on January 25, 2023, HCSD's Director of Special Education Instruction, LaTonya Brown, responded to Cavin's mother by email attaching a letter that stated the "purpose of this communication is to acknowledge receipt of [Cavin's mother's] email and provide a formal response to the concerns noted."

110.

HCSD's letter written to Cavin's mother by LaTonya Brown dated January 25, 2023 also stated that Cavin's bus service was based on the resources available and was lawful, both of which were false claims except that regarding resources, while HCSD certainly had sufficient resources, HCSD intentionally denied resources to disabled students with autism whom HCSD had relegated to a non-integrated, discriminatory, harmful setting so that those students, including Cavin, could receive non-discriminatory, equal access to public school education and public school transportation that was and is not discriminatory, that requires students with autism to ride and sit on buses 4-6 hours each day, mandates autistic

student ride with older suspended and or expelled students and defecate and urinate on themselves on the bus and leave home and school early each day.

111.

HCSD had the resources available to provide Cavin direct transportation to and from Hickory Flat Elementary School, and it received additional State and Federal funding for educating Cavin, but HCSD intentionally decided to use those funds on non-disabled students instead of providing Cavin reasonable, equal, non-discriminatory transportation all the while it only requires regular education students and disabled students without autism to ride a school bus 45 minutes each way and never 4 hours each day.

112.

No HCSD director or administrator, including LaTonya Brown, made any mention of or explained why HCSD required a 6-year-old non-verbal child with autism on a one-hour bathroom schedule to ride a school bus for 4 up to 6 hours each and every school day and leave school early and wait on a bus for 45 minutes so that much larger, older children who have been suspended or expelled from school from HCSD board the same bus.

113.

HCSD high-ranking officials and administrators, Latrina Coxton, Jennifer McDay, Amy Zahn, LaTonya Brown, David Hughes, and Cliff Shearouse were all

also copied on the email sent by LaTonya Brown to Cavin's mother and all refused to take any corrective action whatsoever.

114.

HCSD, through its directors and administrators, Latrina Coxton, Jennifer McDay, Amy Zahn, LaTonya Brown, David Hughes, and Cliff Shearouse implemented HCSD's widespread custom and procedures and practices by refusing to take any action to address the inaccessible, unsafe, discriminatory transportation HCSD demanded for Cavin as it is also HCSD's practice to run children with autism out of public school and or force their parents to provide public school transportation.

115.

HCSD's directors and administrators Latrina Coxton, Jennifer McDay, Amy Zahn, LaTonya Brown, David Hughes, and Cliff Shearouse, individually and collectively, as it involves Cavin and other children with autism placed in and with non-integrated, discriminatory, inaccessible placement and transportation, have the absolute authority to make such decisions for HCSD, and regarding Cavin, they did so and continue to do so.

116.

HCSD's directors and administrators Latrina Coxton, Jennifer McDay, Amy Zahn, LaTonya Brown, David Hughes, and Cliff Shearouse, individually and

collectively, had and continue to have final decision making authority for HCSD in the area of providing transportation to children with autism, and they exercised and continue to exercise that authority for HCSD for Cavin.

117.

HCSD's directors and administrators Latrina Coxton, Jennifer McDay, Amy Zahn, LaTonya Brown, David Hughes, and Cliff Shearouse, individually and collectively, acted with deliberate indifference and intent to harm when each individual disregarded Cavin's mother's concerns that Cavin was going to be placed in a dangerous situation each school day for multiple hours with larger and older students who had been suspended or expelled from school at HCSD for maladaptive behavior where he could suffer serious physical and emotional harm and abuse.

118.

HCSD has intentionally denied and continues to intentionally deny Cavin equal protection under the law to any public education, access to education, public transportation, access to bathrooms in a public setting, access to accessible toilet facilities, access to accessible furniture to use in a public school setting, access to PE, access to recess, access to outdoor recess, access to a safe, non-violent, non-segregated, and non-discriminatory setting, refusing to provide any of these components of HCSD public education to Cavin, thereby totally excluding Cavin

from public school education and public transportation and substantially interfering with his ability to exercise his right to public school education and transportation.

119.

There is no logic, merit, or defense to HCSD forcing Cavin to ride and sit on a school bus each day for 4 plus hours, to be denied a bathroom and classroom furniture he can access independently, to be denied his right to receive PE and recess, to have to leave home at 5:30 a.m. for a school day beginning at 7:10, to leave school early being denied education provided to other students, to be denied access to a bathroom as needed, and or to mandate the child defecate and urinate on himself every school day to even have any possible "right" to a public school building whatsoever, all in violation of state constitutional, statutory, and regulatory laws and unlike other non-disabled students and disabled students without autism are treated by HCSD.

120.

The right not to have to defecate and urinate on oneself to access public school education, to not fall into the toilet bowl, to be able to independently access the toilet as needed, to not sit and ride on a bus 4 or more hours each school day, and to independently access classroom furniture are mandatory basics for Cavin to access his fundamental rights to public school education and transportation, and HCSD intentionally has denied and continues to deny all this to Cavin because he

is a student with autism and or a student with autism whose mother has advocated for him.

121.

HCSD, its board of education, its attorneys, and its superintendent are all fully aware of the denials of equal protection under the law set forth herein (as well as HCSD's discrimination and retaliation, as set forth herein) and HCSD refuses to alter and correct any of them or even attempt to do so in any meaningful way.

122.

In February 2023, HCSD was fully informed of all the issues set forth in this complaint through HCSD's attorneys, and HCSD refused to address any of the issues, even refusing to actually provide a detailed plan of transportation that was not discriminatory and a denial of equal protection under the law.

123.

In February 2024, HCSD, its board of education, its superintendent, and its attorneys were all fully informed of all the issues set forth in this complaint by way of formal, legal written notice to HCSD provided directly to HCSD's superintendent and attorneys for the board and HCSD, and since that time forward, HCSD continues to refuse to address or correct even one of the issues set forth herein.

124.

HCSD's denial of equal protection under the law to Cavin and its discrimination and retaliation of Cavin and his mother have been fully approved and authorized by HCSD and its board, which continue to refuse to address any of the ongoing issues of discrimination, retaliation, and denial of equal protection under the law.

125.

HCSD, its board of education, its attorneys, its superintendent, and its top administrators in special education and transportation insist pursuant to HCSD' widespread unconstitutional policy, practice, custom, and procedure that when placing children with autism such as Cavin, HCSD can unilaterally pick any school it wishes, no matter how long the bus ride is, how many buses the child will be required to ride, whether the child will have to defecate and urinate on himself, whether the child will be required to ride the bus each day with students who have been suspended or expelled from school at HCSD for maladaptive behavior, and regardless the child will be deprived of education by being forced to leave school early, all in direct violation of the rights of children with autism, including Cavin's rights, to equal protection of the law.

126.

HCSD's unconstitutional custom, practice, policy, and procedure was the moving force behind HCSD's decision to place Cavin at Hickory Flat Elementary and provide him transportation services that placed him in a highly inappropriate and dangerous situation that required Cavin ride and sit on a bus for 4 plus hours each school day, leave school early, leave home early, and defecate and urinate on himself each school day.

127.

HCSD by way of its widespread and unconstitutional policy, practice, custom, and procedure, demands that children with autism who cannot communicate what goes on their school day and or children with autism who cannot communicate what goes on in their school day and whose parents advocate for them, including Cavin, be placed in a violent, aggressive, segregated setting where students physically harm others routinely, where no access to physical education that non-disabled peers receive is provided, where outdoor recess is denied, where recess is denied, and where a bathroom and classroom furniture that can be accessed independently is denied.

128.

It is because Cavin has autism and cannot communicate what happens on the bus and at school or that he is such a child with autism whose mother has

advocated for him that HCSD, acting under its widespread policy, practice, and custom, will not allow Cavin equal access to any schooling by forcing him to ride the bus each day for 4 to 6 hours and denying him other equal treatment as set forth above.

129.

To HCSD, Cavin, due to his disabilities as a child with autism who cannot communicate what happens on the bus or at school and or because he is a such a child whose mother has advocated for him, Cavin and his lawful rights do not matter to HCDS, and to HCSD, he is not entitled to public school education or transportation or equal treatment under the law to public school education or transportation.

130.

HCSD by way of its widespread and unconstitutional policy, practice, and custom intentionally created a harmful, dangerous, inaccessible environment for Cavin by insisting that for Cavin to access any education at HCSD, he ride a school bus with larger, older students who have been suspended or expelled from school at HCSD, ride and sit on a school bus for 4 plus hours each day, be placed in a segregated setting with violent, aggressive, out of control children each day, and be denied access to the bathroom as needed and to a bathroom that is accessible to Cavin.

131.

Due to the HCSD's denial and ongoing denial of equal protection of the law,
Plaintiffs are entitled to recover monetary damages for all harms caused them,
including but not limited to the denial of any education to Cavin, the exclusion of
education to Cavin, the harm he was caused by HCSD, the loss of wages and costs
incurred to educate Cavin suffered by his mother, and all other monetary damages
allowed by law.

132.

Due to the HCSD's denial and ongoing denial of equal protection of the law,
Plaintiffs are entitled to injunctive relief prohibiting them from denying as set forth
herein Cavin's fundamental rights to public school education and public
transportation on equal terms under the law.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully pray for the following relief:

1) That Plaintiffs be granted their right to a jury trial against HCSD for HCSD's
   violation of their rights under the anti-discrimination provisions of the ADA
   and Section 504;

2) That Cavin be granted his right to a jury trial against HCSD for HCSD's
   violation of Cavin's constitutional right to equal protection under the law in
   violation of Section 1983;

3) That Plaintiffs be granted their right to a jury trial against Defendant HCSD on their ADA and Section 504 retaliation claims;

4) That Plaintiffs be awarded by a jury of their peers recovery of all monetary damages proven at a trial for the harm HCSD has caused and continues to cause them in violation of the ADA, Section 504, and Equal Protection Clause;

5) That the Court enjoin HCSD from continuing to take unlawful, discriminatory, retaliatory, and unconstitutional acts as set forth herein;

6) That Plaintiffs be awarded by this Court their attorneys' fees and litigation expenses and costs associated with this matter pursuant to the ADA, Section 504, the Fourteenth Amendment to the U.S. Constitution, and Section 1983; and

7) That Plaintiffs be awarded all other relief as the Court deems just and appropriate.


This 20th day of June 2024.


/s/ Chris E. Vance
Chris E. Vance
Ga. Bar No. 724199
Counsel for Plaintiffs

**CHRIS E. VANCE, P.C.**
2415 Oak Grove Valley Road, N.E.
Suite 100
Atlanta, GA  30345
Telephone:  (404) 320-6672
Facsimile:  (404) 320-3412
chris@chrisvancepc.com