IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| C.H., by and through his mother, J.H., and J.H.,<br><br>    Plaintiffs,<br><br>                                    v.<br><br>HENRY COUNTY SCHOOL DISTRICT,<br><br>    Defendant. | Civil Action No.<br>1:24-cv-02707-SDG |

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss [ECF 14] filed by Defendant Henry County School District. For the following reasons, the District's motion is **DENIED**.

## I.    BACKGROUND

This dispute arises out of the District's alleged mistreatment of an elementary-aged student with disabilities. Plaintiffs C.H. (the student) and J.H. (C.H.'s mother) allege that C.H., who was seven years old at the time this case was filed, has "autism, speech and language impairment, sensory processing disorder, and social difficulties."[1] Despite J.H.'s efforts,[2] the District has allegedly failed to

---

[1]    ECF 1, ¶ 1.

[2]    *Id.* ¶ 2.

provide C.H. with integrated academic settings, behavioral support,[3] educational therapy,[4] or a toilet that he can use on his own while at school.[5]

Plaintiffs sued for both monetary damages and injunctive relief,[6] bringing three claims: (1) disability discrimination under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794 *et seq.*;[7] (2) retaliation under Title II and § 504;[8] and (3) under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment.[9] The District now moves to dismiss in whole or in part, under Federal Rule of Civil Procedure 12(b), on two grounds.[10] First, the District asserts

---

[3]   *Id.* ¶ 33.

[4]   *Id.* ¶¶ 19–21.

[5]   *Id.* ¶ 43.

[6]   *Id.* at 53.

[7]   *Id.* ¶¶ 6–74.

[8]   *Id.* ¶¶ 75–89.

[9]   *Id.* ¶¶ 90–132.

[10]  The District raises several additional arguments for the first time in its reply brief, including that Plaintiffs' retaliation claim is subject to dismissal for failure to establish a *prima facie* case. ECF 17, at 11. But courts in this district generally do not consider arguments raised for the first time in a reply brief, and this Court will not do so here. *See, e.g., Reliance Ins. Co. of Ill. v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000); *cf. United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief).

that Plaintiffs' failure to exhaust administrative remedies bars all of their claims.[11] Second, the District asserts that J.H.'s failure to allege that she herself has a disability deprives her of standing.[12]

## II.    DISCUSSION

### A.    Exhaustion

First, the District argues that Plaintiffs' Title II and § 504 claims are barred for failure to exhaust the administrative remedies available under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*[13] The IDEA gives children with disabilities the right to FAPE, or a "free appropriate public education." 20 U.S.C. § 1412 (a)(1)(A). FAPE encompasses special educational instruction that is "tailored to meet a child's unique needs," as well as "sufficient supportive services to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017). The "primary vehicle" for effectuating FAPE is the IEP, or individualized education program, which sets academic goals appropriate for the child's achievement level and provides for the "special education and related services" necessary to meet those goals. *Id.* at 158–59.

---

[11]    ECF 14, at 2–5.

[12]    *Id.* at 5–7.

[13]    The District has not raised the issue of whether Plaintiffs' § 1983 claim is also barred for failure to exhaust administrative remedies, and thus the Court does not address it.

The educational guarantees of the IDEA commonly "overlap" with the anti-discrimination provisions of Title II and § 504, *id.* at 171, which protect "both adults and children with disabilities, in both public schools and other settings," *id.* at 159.[14] Particularly relevant is Title II's and § 504's requirement that public entities reasonably modify existing practices to accommodate persons with disabilities. *Id.* at 159–60. The interaction between this requirement and the IDEA is governed by 20 U.S.C. § 1415(*l*), under which a plaintiff "seeking relief that is also available under [the IDEA]" must exhaust the IDEA's administrative procedures—which include a due process hearing and a state agency appeal—before filing suit under Title II or § 504. *Fry*, 580 U.S. at 159, 161.

The District argues that the complaint must be dismissed under § 1415(*l*) for Plaintiffs' failure to administratively exhaust under the IDEA.[15] Plaintiffs respond that (1) the District's exhaustion argument is improper because it relies on facts that are not alleged in the complaint;[16] (2) exhaustion is not required because the complaint does not seek relief for a denial of FAPE;[17] and (3) exhaustion is not

---

[14]    Claims under Title II and § 504 are analyzed together because the statutes are "textual[ly] similar[ ]" and the case law applies "interchangeably" to both. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

[15]    ECF 14, at 2.

[16]    ECF 15, at 10.

[17]    *Id.* at 15.

required because the complaint seeks relief in the form of monetary damages.[18]
These issues are addressed in turn.

### 1.  The District's Administrative Exhaustion Argument Is Properly Considered on a Motion to Dismiss.

As a threshold matter, the District's administrative exhaustion argument
does not rely on facts outside of the complaint. On a motion to dismiss, a court
must generally "limit its consideration to the pleadings and any exhibits attached
to it." *Baker v. City of Madison*, 67 F.4th 1268, 1275 (11th Cir. 2023). According to
Plaintiffs, because the complaint does not allege that administrative procedures
under the IDEA remain unexhausted, the Court cannot dismiss the complaint on
exhaustion grounds without improperly considering facts extrinsic to the
complaint.[19] The Court disagrees. Exhaustion under § 1415(*l*) is best characterized
as a condition precedent that must be met before certain Title II and § 504 actions
are commenced. *Santos-Zacaria v. Garland*, 598 U.S. 411, 417 (2023) (characterizing
exhaustion requirements as "quintessential claim-processing rule[s]"); *see also*
*Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1001 (11th Cir. 1982) (deeming
administrative exhaustion to be a condition precedent to the commencement of a

---

18  *Id.* at 19.

19  *Id.* at 10.

Title VII action).[20] And under Federal Rule of Civil Procedure 9(c), the onus is on the *plaintiff* to allege "that all conditions precedent to the institution of the lawsuit have been fulfilled." *Jackson*, 678 F.2d at 1010. Here, where Plaintiffs have by their own admission failed to allege IDEA exhaustion,[21] their complaint could properly be dismissed under Rule 9(c) without considering facts outside of the complaint.

### 2. The Gravamen of Plaintiffs' Complaint Cannot Be Decided on this Record.

Plaintiffs' failure to allege administrative exhaustion notwithstanding, their Title II and § 504 claims will *not* be barred by § 1415(*l*) if the crux of the complaint seeks relief for something other than a denial of FAPE. That rule comes from *Fry v. Napoleon Community Schools*, in which the Supreme Court resolved a circuit split over the scope of § 1415(*l*)'s exhaustion requirement. 580 U.S. at 164. *Fry* rejected the idea that § 1415(*l*) applies whenever a plaintiff complains of harms that are "educational in nature." *Id.* Rather, exhaustion is required only where "the crux —

---

[20] There is a line of Eleventh Circuit cases that treats failure to exhaust under the IDEA as a jurisdictional defect. *See, e.g.*, *Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1421 (11th Cir. 1998). The Court need not decide now whether IDEA exhaustion is a jurisdictional requirement or a condition precedent, however, because in either case Plaintiffs bear the burden of alleging exhaustion in their complaint. *Compare Jackson*, 678 F.2d at 1010, *with Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) ("[T]he pleader must affirmatively allege facts demonstrating the existence of jurisdiction.").

[21] ECF 15, at 10.

or, in legal-speak, the gravamen—of the plaintiff's complaint" is relief from a denial of FAPE. *Id.* at 165.

Fry recognized that this rule gives a plaintiff some control over whether § 1415(*l*) will apply, because he can choose which facts to include in his complaint. *Id.* at 169. At the same time, in evaluating the applicability of § 1415(*l*), *Fry* advised courts to look at "substance, not surface." *Id.* The gravamen of a complaint does not depend on "magic words" or "artful pleading," but on how the relief sought aligns with the "means and ends of … the IDEA on the one hand, [and] the ADA and Rehabilitation Act [ ] on the other." *Id.* at 170. If the gist of the complaint is the denial of "individually tailored educational services," then the suit is about FAPE, and the exhaustion requirement applies. *Id.* at 171. But if the gist of the complaint is the denial of "access to public institutions," then the suit is about "simple discrimination," and no exhaustion will be required. *Id.*

Two "clue[s]," *Fry* proposed, could help lead courts to the gravamen of the complaint. The first comes from the following pair of questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school— say, an employee or visitor—have pressed essentially the same grievance?

*Id.* at 171. If the answer to these questions is yes, according to *Fry*, then the complaint is likely *not* about FAPE. *Id.* at 172. If the answer is no, then it likely is.

7

*Fry* demonstrated the use of these questions with two hypotheticals. In one, a "wheelchair-bound child" sues his school for lack of "access ramps." *Id.* at 171. *Fry* reasoned that the child could bring essentially the same suit against a ramp-less library or theater, and essentially the same suit could be brought against the school by an employee or visitor. *Id.* at 172. Thus, the essence of the child's claim is "equality of access to public facilities"—in other words, discrimination. *Id.* Certainly, the lack of ramps has educational consequences: "[I]f the child cannot get inside the school, he cannot receive instruction there; and if he must be carried inside, he may not achieve the sense of independence conducive to academic (or later to real-world) success." *Id.* at 171–72. But the child is still likely suing for something other than a denial of FAPE. *Id.* at 172.

In the other, contrasting hypothetical, a "student with a learning disability" sues his school for refusing to provide "remedial tutoring in mathematics." *Id.* The student's complaint could allege that the school is refusing "to make a reasonable accommodation" for his learning disability and could be drafted without once mentioning FAPE or an IEP. *Id.* However, the student could not bring a failure-to-tutor suit against a library or a theater, and a failure-to-tutor suit could not be brought against the school by an employee or a visitor. *Id.* at 172–73. So, this learning-disabled student is likely suing for a denial of FAPE. *Id.* at 173.

The first clue to the gravamen of the complaint, therefore, has to do with the complaint's substantive allegations; the second clue comes from the dispute's procedural history. *Id.* at 173. Of special interest is whether a plaintiff "previously invoked the IDEA's formal procedures . . . before switching midstream." *Id.* A court could conclude that the true relief the plaintiff seeks is relief from a denial of FAPE, for example, if the plaintiff had abandoned IDEA proceedings and commenced a discrimination lawsuit just "to maximize the prospects" of his recovery. *Id. Fry* emphasized that procedural history is a question of fact. Thus, courts may be required to conduct discovery on whether the plaintiff began to pursue administrative remedies, and, if he did, why he decided to stop. *Id.*

In *Fry* itself, the substantive allegations were unrelated to FAPE, suggesting that § 1415(*l*) did not apply—but the Supreme Court refrained from ruling on the applicability of § 1415(*l*) as a matter of law without more information about the dispute's procedural history. *Id.* at 175–76. The complaint in *Fry* alleged that a school had refused to allow a child with cerebral palsy to bring her service dog with her to class. *Id.* at 161–62. The Supreme Court reasoned that such a claim could have just as easily been brought against a public library or theater, and could have just as easily been brought by an adult visitor to the school. *Id.* at 175. In addition, the plaintiffs in *Fry* had conceded that the child's educational needs were otherwise met. *Id.* Thus, from what could be gathered from the complaint, the

plaintiffs' suit had "nothing to do with the provision of educational services." *Id.* Nevertheless, *Fry* could not "foreclose the possibility" that the procedural history—on which the record was "cloudy as to the relevant facts"—would reveal "something different." *Id.* at 175–76. The Supreme Court accordingly remanded for further factfinding on "whether (or to what extent) the Frys invoked the IDEA's dispute resolution process" before filing suit. *Id.* at 176.

The § 1415(*l*) analysis here is less straightforward than in *Fry*, because Plaintiffs' complaint seeks relief for *both* individually tailored educational services *and* non-discriminatory access to a public institution. *Fry*'s hypotheticals are most useful when the complaint is entirely about one or the other—either all about FAPE or all about discrimination. *See id.* at 176 (Alito, J., concurring) ("[S]ince these clues work only in the absence of overlap [between the IDEA and other federal laws], I would not suggest them."). A complaint about a lack of access ramps for a wheelchair-bound student, on its face, is clearly about Title II and § 504—*if* the lack of access ramps is the only harm alleged in the complaint. But say the wheelchair-bound student, in the same case, seeks remedial math tutoring: What is the gravamen of that complaint? *Fry* does not provide an easy answer.

The Eleventh Circuit discussed—though did not resolve—this problem in *J.S., III ex rel. J.S. Jr. v. Houston County Board of Education,* 877 F.3d 979 (11th Cir. 2017). The complaint in *J.S.* brought Title II and § 504 claims based on allegations

that an elementary school child with disabilities was, in violation of his IEP, being regularly kept out of his assigned classroom, purportedly for the purposes of mitigating his disruptive behavior, conducting physical therapy, and allowing use of the private restroom. *Id.* at 983. These allegations, which the Eleventh Circuit analyzed under *Fry*'s "gravamen" framework, "[did] not fit neatly into *Fry*'s hypotheticals." *Id.* at 986. Unlike in *Fry*, the allegations in *J.S.* could not be "easily divorce[d]" from the educational context in which they arose. *Id.* In such a case, *J.S.* ruled, what sets a discrimination claim apart is the presence of "something more" than a mere denial of FAPE: "bad faith or gross misjudgment," for example, or "discrimination solely because of [a] disability," or—as was the case in *J.S.*— "exclu[sion] and isolat[ion] from his classroom and peers." *Id.* at 985, 987 (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999)). Thus, on one hand, *J.S.* recognized that the child's claim could well have been brought "as a FAPE violation for failure to follow [his] IEP." *Id.* at 986. On the other hand, *J.S.* held the child's claim was "also cognizable as a separate claim for intentional discrimination under the ADA and § 504." *Id.*

The complaint here, like the complaint in *J.S.*, does not fit neatly into *Fry*'s hypotheticals: It is not easy to divorce C.H.'s claim of discrimination from the elementary-school context in which it arose. *Id.* at 986. Thus, on one hand, many of Plaintiffs' claims could have just as easily been brought under the IDEA.

Allegations that C.H. was deprived of integrated classroom settings,[22] for example, or of behavioral support services,[23] or of speech and occupational therapy,[24] call to mind *Fry*'s hypothetical math student deprived of remedial tutoring. Plaintiffs' insistence that the alleged deprivations constitute "intentional discrimination [against C.H.] based solely upon his disabilities"[25] at times feels forced, like IDEA-shaped pegs being jammed into discrimination-shaped holes. The difficulty of transplanting these particular claims to non-educational contexts could signal that the gravamen of their complaint is merely a denial of FAPE. *Fry*, 580 U.S. at 173.

On the other hand, as *J.S.* explained, the fact that many of Plaintiffs' claims lack clear non-educational analogues does not eliminate the possibility that C.H. was a victim of discrimination. The complaint contains allegations that, in the Court's view, implicate C.H.'s IEP but are nevertheless cognizable as a separate claim for intentional discrimination. For example, the complaint alleges that the District relegated C.H. to an "autism classroom" plagued by aggressive and violent behavior,[26] as a result of which C.H. was denied physical education and

---

[22]   ECF 1, ¶ 24.

[23]   *Id.* ¶ 13.

[24]   *Id.* ¶ 16.

[25]   *See, e.g.*, *id.* ¶ 13.

[26]   ECF 1, ¶ 26.

outside recess[27] and was bitten by another student.[28] The complaint also alleges that the District failed to provide C.H. with an accessible toilet[29]—despite his need "to be taken to the bathroom each hour"[30]— causing him to soil his clothes while in school.[31] The District allegedly rebuffed J.H's inquiry into the lack of accessible toilets with the line, "That is how schools are built."[32]

Such allegations describe something more than a denial of FAPE, and "reach beyond a misdiagnosis or failure to provide appropriate remedial coursework." *Id.* at 987. There is an inference that, by relegating C.H. to an autism classroom, the district exposed him to physical harm, denied him educational amenities that were given to his peers, deprived him "of opportunities for enriching interaction with fellow students," *id.* at 987, and did so solely because C.H. was disabled. There is an inference that by allowing C.H. to repeatedly soil his own clothes in school— the complaint alleges that it happened five times in five days[33]—the District subjected him to the kind of social isolation and stigmatization that the Eleventh

---

[27] *Id.* ¶ 38.

[28] *Id.* ¶ 60.

[29] *Id.* ¶ 43.

[30] *Id.* ¶ 34.

[31] *Id.* ¶¶ 15, 65.

[32] *Id.* ¶ 62.

[33] *Id.* ¶ 65.

Circuit deemed discriminatory in *J.S. Id.* And there is an inference that, by ignoring J.H.'s request that C.H. be provided with an accessible bathroom—one with an appropriately sized toilet, and with paper towels that C.H. could reach[34]—the District displayed gross misjudgment if not outright bad faith.

With respect to the toileting allegations in particular, C.H. more closely resembles *Fry*'s wheelchair-bound child than its remedial math student. C.H. could likely bring Title II and § 504 discrimination claims for lack of accessible toileting facilities in a non-educational context: if not against a library or theater, then at least "against another public childcare provider." *Sophie G. ex rel. Kelly G. v. Wilson Cnty. Sch.*, 742 F. App'x 73, 79 (6th Cir. 2018) (holding that a discrimination suit challenging an after-school program's refusal to admit a non-toilet-trained child was not barred by § 1415(*l*)). Likewise, a Title II and § 504 claim could likely be brought by an employee against a school, say, for a reasonable accommodation for incontinence, or for more accessible toileting facilities. The fact that the District's alleged failures have a clear educational etiology does not necessarily mean that Plaintiffs' complaint only seeks relief for a denial of FAPE. *See United States v. Georgia*, 461 F. Supp. 3d 1315, 1326 (N.D. Ga. 2020) (refusing to require IDEA exhaustion for a complaint which, though "involv[ing] allegations

---

[34]    *Id.* ¶ 43.

that the Defendant failed to provide a FAPE," also alleged a Title II violation "separate and apart from the IDEA claims").

Of course, it is one thing to recognize—as the Eleventh Circuit did in *J.S.*, and as the Court does here—that a complaint contains overlapping claims for a denial of FAPE and for disability discrimination; it is another thing entirely to decide which one of those claims constitutes the gravamen of the complaint. The complaint in this case spans the IDEA-discrimination spectrum. Some of Plaintiffs' allegations (about behavioral support, or speech and occupational therapy) are about FAPE. Others (about C.H.'s toileting needs) are about discrimination. In between these two are yet further allegations (about C.H.'s placement in violent, segregated classrooms with limited educational services) that are about both. *Fry* gives virtually no guidance on how to parse such a complaint. *J.S.* could be read as indicating that the gravamen here is discrimination, inasmuch as the complaint alleges "something more" than a mere denial of FAPE. However, *J.S.* was not a § 1415(*l*) case, and the Court hesitates to rely on it too heavily in the exhaustion context. 877 F.3d at 986.

With the complaint's allegations seemingly deadlocked, the Court would turn to the dispute's procedural history—if there were any procedural history for it to consider. Here, there is not. As already discussed, Plaintiffs' complaint does not reference the existence of a collateral administrative proceeding. And though

the District has alleged in its briefs that such a proceeding is currently before the Georgia Office of State Administrative Hearings,[35] it has not supported those allegations with evidence the Court can consider at this juncture. As noted above, a court is generally limited to the allegations in the complaint in ruling on a motion to dismiss. There are three exceptions to this rule, none of which the District has invoked: It has neither moved to convert this motion into one for summary judgment, nor submitted administrative records of which the Court might take judicial notice, nor argued for the incorporation-by-reference of (those missing-from-the-record) administrative records into the complaint. *Baker*, 67 F.4th at 1276.

*Fry* suggests that where, as here, the administrative record is "cloudy," it is prudent for courts to conduct factfinding on the dispute's procedural history before ruling on the applicability of § 1415(*l*). 580 U.S. at 175. That kind of prudence is particularly appropriate here, given the difficulty of determining the gravamen of Plaintiffs' complaint from its allegations alone. The District's motion to dismiss for failure to exhaust under § 1415(*l*) is thus denied without prejudice. The Court will, however, permit the parties to supplement the record with evidence on the existence of a parallel IDEA administrative proceeding, and, if

---

[35]   ECF 14, at 2; ECF 17, at 8.

such a proceeding is ongoing, on why Plaintiffs have decided to simultaneously seek a remedy in this forum. *Id.* at 176.

### 3. Plaintiffs' Claims as to Monetary Damages Need Not Be Exhausted.

The District's motion to dismiss for failure to exhaust must be denied in part for another reason: Under the rule recently set forth by the Supreme Court in *Luna Perez v. Sturgis Public Schools*, § 1415(*l*) does not apply to Plaintiffs' request for monetary damages. 598 U.S. 142 (2023). Returning just a few years after *Fry* to the text of § 1415(*l*), the Supreme Court in *Luna Perez* explained that a plaintiff seeks "relief that is also available" under the IDEA "only to the extent he pursues a suit . . . for *remedies* IDEA also provides." *Id.* at 146–47. And, crucially, the IDEA does *not* provide for monetary damages, but only injunctive relief. *Id.* at 148; *Ortega v. Bibb Cnty. Sch. Dist.*, 397 F.3d 1321, 1325 (11th Cir. 2005) ("[A] damages remedy . . . is fundamentally inconsistent" with the goal of the IDEA). Thus, *Luna Perez* held that a Title II claim for damages was not barred by § 1415(*l*), even though the plaintiff was seeking relief from a denial of FAPE without exhausting administrative remedies under the IDEA. 598 U.S. at 147.

Defendants argue that this case is distinguishable from *Luna Perez* because the plaintiff in that case sought *only* monetary damages, whereas Plaintiffs here

seek both monetary damages *and* injunctive relief.[36] It is an argument that was anticipated and foreclosed by *Luna Perez*, which envisioned a scenario in which "a plaintiff . . . files an ADA action seeking both damages and the sort of equitable relief IDEA provides." *Id.* at 150. In such a case, the plaintiff's "request for *equitable relief* [may be] barred or deferred" by § 1415(*l*), *id.* (emphasis added)—but, by clear implication, the plaintiff's request for damages would not. *Cf. Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1281 n.17 (11th Cir. 2001) ("[A] request for prospective relief may proceed differently than a request for retrospective relief."). Thus, § 1415(*l*)—regardless of whether it applies to Plaintiffs' claims for *injunctive relief*—does not apply to their claims for *damages*, as to which the District's motion to dismiss is denied as a matter of law.

### B.   Standing

Second, the District argues that J.H. lacks standing to bring Title II and § 504 discrimination claims because she is not an "individual with a disability."[37] Plaintiffs concede that J.H. is not herself disabled.[38] However, they argue that she

---

[36]   ECF 17, at 9.

[37]   ECF 14, at 5. This argument is inapplicable to the two other claims in the complaint—Title II and § 504 retaliation, and § 1983 equal protection—because neither requires a plaintiff to prove that she is an individual with a disability.

[38]   ECF 15, at 21.

has standing to bring discrimination claims by virtue of her association with C.H.[39]
The Court agrees. The law in the Eleventh Circuit, set forth in *McCullum v. Orland*
*Regional Healthcare System, Inc.*, is clear: Under Title II and § 504, "non-disabled
individuals have standing to bring claims when they are injured because of their
association with a disabled person." 768 F.3d 1135, 1142 (11th Cir. 2014).[40]

The District relies on *Todd v. Carstarphen*, a post-*McCullum* district court
case, for the proposition that "associational claims are not viable under Title II or
the Rehabilitation Act."[41] 26 F. Supp. 3d 1311 (N.D. Ga. 2017). That reliance is, in
this Court's view, misplaced. *Todd* did indeed hold that associational claims are
"not cognizable" under Title II or § 504. *Id.* at 1342. But in so holding, *Todd*
distinguished *McCullum* as a Title III case, *id.* at 1341, and disagreed with the
reasoning of three circuit court cases that had reached the opposite conclusion and
on which *McCullum* had directly relied, *compare id.* at 1338, 1342 n.59, *with*
*McCullum*, 768 F.3d at 1142. This Court does not believe *Todd* is consistent with
*McCullum*, and respectfully declines to follow it.

---

[39]   *Id.* at 22–23.

[40]   Because the plaintiffs in *McCullum* named a public and a private hospital as
defendants, the case implicated both Title II and Title III of the ADA. 768 F.3d
at 1140 & n.4; *see also McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 2013 WL
1212860, at *1 (M.D. Fla. Mar. 25, 2013) (characterizing the plaintiffs' claims as
arising under Title II).

[41]   ECF 14, at 5.

Even under *McCullum*, however, the right of non-disabled individuals to bring association discrimination claims is "not limitless." 768 F.3d at 1143. *McCullum* did not adopt the "broad" conception of associational standing endorsed by the Second Circuit, under which non-disabled plaintiffs can bring Title II and § 504 claims whenever they can show "an independent injury *causally related* to the denial of federally required services to the disabled persons with whom [they] are associated." *Id.* at 1144 (emphasis added) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) (Wesley, J. concurring)). Rather, under the rule set forth in *McCullum*, a Title II and § 504 plaintiff has associational standing "only if she is personally excluded, denied benefits, or discriminated against because of her association with a disabled person." *Id.*

Here, the allegations in the complaint, assumed to be true at this stage,[42] are sufficient to establish J.H.'s associational standing. According to the complaint, C.H.'s disability denied him use of the transportation services that the District

---

[42] The parties agree that, for purposes of the District's motion, the allegations in Plaintiffs' complaint should be assumed to be true under Federal Rule of Civil Procedure 12(b)(6). ECF 15, at 9; ECF 17, at 1–2. However, because standing is a question of subject matter jurisdiction, this part of the District's motion is a facial attack on jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008). A facial attack on jurisdiction requires a court "merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 1233.

provided to its non-disabled students:[43] The only transportation options the District made available to C.H. required him to spend hours at a time riding the bus,[44] which he could not do given his need for hourly toilet access.[45] The complaint alleges that, as a result, J.H. was forced drive C.H. to and from school at personal expense.[46] That is, for now, a sufficient showing that J.H. was denied a benefit because of her association with C.H. *See S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 713 (W.D. Pa. 2015) (holding, in the context of Title II and § 504, that transportation services are a benefit provided by the school to a child's caretakers). If the District wishes to more squarely contest whether transportation services for C.H. are properly considered a "benefit" to J.H., it may do so at summary judgment.

## III.    CONCLUSION

The District's motion to dismiss [ECF 14] is **DENIED** as to Plaintiffs' Title II and § 504 claims for monetary damages, and **DENIED without prejudice** as to those claims for injunctive relief. The District is **ORDERED** to file its answer

---

[43]    ECF 1, ¶ 17.

[44]    *Id.* ¶¶ 47–51.

[45]    *Id.* ¶¶ 34, 37.

[46]    *Id.* ¶¶ 40, 68.

within 14 days of this Order. The parties are further **ORDERED** to file their Joint Preliminary Report and Discovery Plan within 30 days of the District's answer.

The District is **GRANTED** leave to supplement the record and renew its motion to dismiss under § 1415(*l*), as to Plaintiffs' Title II and § 504 claims for injunctive relief only, within 30 days of this Order. Plaintiffs' response will be due within 14 days of the District's motion, and the District's reply 14 days thereafter.

**SO ORDERED** this 31st day of March, 2025.

Steven D. Grimberg
United States District Judge
